943 P.2d 45

Reuben BISCHOFF, Howard Clark, Blair Calaway, Dee Harris, Harold Harris, James Mortenson, Austin Price and Boyd Price, Plaintiffs–Appellants,

v.

SALEM UNION CANAL COMPANY, LIMITED, an Idaho corporation, Cleve Bagley, individually and as a Director of the Salem Union Canal Company, Limited, an Idaho corporation, Max L. Ball, individually and as a Director of the Salem Union Canal Company, Limited, an Idaho corporation, Garon Brower, individually and as a Director of the Salem Union Canal Company, Limited, an Idaho corporation, Jerry Dalling, individually and as a Director of the Salem Union Canal Company, Limited, an Idaho corporation, and Steve Lusk, individually and as a Director of the Salem Union Canal Company, Limited, an Idaho corporation, Defendants–Respondents.

No. 23356.

Supreme Court of Idaho, Boise, May 1997 Term.

July 21, 1997.

Pike, Seedall & Shurtliff, P.A., Idaho Falls, for Plaintiffs–Appellants. Scott R. Seedall argued.

Grover & Archibald, Rigby, for Defendants–Respondents. Blair J. Grover argued.

McDEVITT, Justice.

This is an action brought by seven shareholders of Salem Union Canal Company, Limited, an Idaho corporation (Salem Union). This is a derivative shareholder suit.

## I.

### FACTS AND PRIOR PROCEEDINGS

Salem Union is organized and operated to deliver water to shareholders from a point of diversion on the Henry's Fork of the Snake River. It also has a decreed water right to 630 acre feet per day from April 1 to July 1, and 480 acre feet per day from July 1 to November 1, and owns 30 shares of storage water in Henry's Lake Reservoir.

Prior to 1953, a diversion point on the Teton River was claimed by North Salem Agriculture and Milling Company, Limited (North Salem). North Salem had a decreed water right from April 1 to July 1 of 53 acre feet per day, without any storage rights in and to water in Henry's Lake.

In 1953, Plaintiffs Calaways desired to improve the diversion point and straighten the Teton River to better utilize their property. Calaways alleged that North Salem did not wish to pay for the expense of straightening the Teton River, and at that point in time North Salem abandoned their claim to the diversion works and agreed with Calaways to "push in the canal of North Salem." Subsequent to that time, Salem Union took over the diversion works, paid the expense to straighten the river, improved the canal and entered into an agreement in February of 1953 with Calaways for the same. It is alleged by plaintiffs that since the agreement

of February 14, 1953, Salem Union has paid all maintenance, upkeep, delivery and water master charges, and hence North Salem had abandoned all interest in and to that diversion works for the current Salem Union.

Plaintiffs allege that North Salem owners were also directors of Salem Union, and that in March, 1996, they caused North Salem to merge into Salem Union even though the individual Defendants had a conflict of interest, which was not disclosed. As a result of the merger North Salem has improved its position, and has also obtained an interest in the Henry's Lake storage water, which it did not have prior to the merger. Plaintiffs further argue that pursuant to I.C. § 30–1–41(b), the merger should be set aside and the corporations returned to their pre-merger status with whatever each owned at that point in time.

The Third Count of plaintiffs' Complaint alleges the diminution of their individual interest in and to the Henry's Lake storage, as a result of the merger of North Salem into Salem Union.

The Fourth Count of the Complaint alleges a breach of fiduciary duty by the individual Defendants.

The Fifth Count of plaintiffs' Complaint alleges self-dealing on the part of the individual Defendants and seeks reimbursement from the individual Defendants.

The Sixth Count of plaintiffs' Complaint seeks attorney's fees.

Defendants moved for dismissal of plaintiffs' Complaint pursuant to Idaho Rule of Civil Procedure 12, based on lack of jurisdiction and failure to join an indispensable party. The trial court granted Defendants' Motion as to Counts One, Two, Three and Four, denied the Motion as to Count Five and reserved ruling as to Count Six.

Subsequent to the trial court's ruling, plaintiffs voluntarily dismissed Counts Five and Six.

Plaintiffs appeal from the order of the trial court.

## II.

### ISSUES PRESENTED ON APPEAL

1. Did the trial court err when it dismissed Counts One through Four of Plaintiffs' Complaint, holding that the action was a private water adjudication and that, pursuant to I.C. § 42–1404, it lacked jurisdiction in the matter?

2. Did the trial court err when it dismissed Counts One through Four of Plaintiffs' Complaint instead of treating Defendants' Motion as an I.R.C.P. 12(b)(3) motion to transfer venue to the Snake River Adjudication Court (SRBA)?

## III.

### THE TRIAL COURT ERRED WHEN IT DISMISSED COUNTS ONE THROUGH FOUR OF PLAINTIFFS' COMPLAINT

The Defendants, in their Rule 12 Motion to Dismiss the action, urged the trial court that a determination of the issues in the matter as outlined in Plaintiffs' Complaint required the court to determine abandonment and/or transfer of diversion works from North Salem to Salem Union, whether or not North Salem abandoned or transferred water rights of North Salem to Salem Union a determination of the abandonment or transfer of the place of use of North Salem's water and changes in priorities from abandonment or transfers.

The Defendants relied upon this Court's opinion of *Walker v. Big Lost River Irrigation Dist.*, 124 Idaho 78, 856 P.2d 868 (1993). Defendants misperceived the application of *Walker* to this case. Counts One and Two of Plaintiffs' Complaint allege fraud, the specifics of which was the fact that North Salem owners were also directors of Salem Union and that these owners caused North Salem to merge into Salem Union without ever disclosing these facts to the other members of Salem Union. These Counts further contain the allegation that the owners of North Salem had, in an agreement with Plaintiffs, agreed that Plaintiffs might fill in one canal being used by North Salem when Plaintiffs sought to straighten their diversion point from the Fall River, although North Salem had other diversion points.

The Third Count of Plaintiffs' Complaint alleges that Plaintiffs, as a result of the fraud

alleged in Counts One and Two, suffered a diminution of their interest in Henry's Lake storage water.

The Fourth Count of Plaintiffs' Complaint alleges a breach of fiduciary duty by the individual Defendants in acting in their own interest, other than in the interest that they represented as directors of Salem Union.

The trial court must first deal with the fraud and self-dealing Counts of Plaintiffs' Complaint and determine whether or not an agreement was made by North Salem and the Plaintiffs to permit the Plaintiffs to fill in one canal used by North Salem. Having made these determinations, if any issue of water rights must be dealt with, the trial court could then transfer the matter to the SRBA.

In *Walker*, this Court held that "[t]hus, once SRBA was commenced, jurisdiction to resolve all of the water rights claims within the scope of the general adjudication is in the SRBA district court only. Jurisdiction remains with the SRBA district court until it issues a final order concerning the particular water right at issue." *Walker*, 124 Idaho at 81, 856 P.2d 868.

Until all of the underlying issues of fraud and self-dealing are determined by the trial court, there is no determination necessary of any essential element of a water right in the present action. If we held otherwise, the SRBA would be swamped with innumerable divorce, real estate transactions and other litigation that might, dependent on the outcome of the underlying litigation, require a subsequent determination of or transfer of water rights.

We do not reach the remaining issue raised in this case.

### IV.

### CONCLUSION

We reverse the trial court's decision in this matter. No costs or fees on appeal.

TROUT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.